IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| C.H. KIRKMAN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:01CV00850 |
| | ) | |
| NORFOLK SOUTHERN RAILWAY CO., | ) | |
| and QWEST COMMUNICATIONS | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

MEMORANDUM OPINION

Tilley, Chief Judge

This case arises out of a dispute between Plaintiff C.H. Kirkman, Jr. and Defendants Norfolk Southern Railway Co. ("NSR") and Qwest Communications Corporation ("Qwest") over the installation of fiber optic cable on a tract of land owned by the Plaintiff. It is now before the Court on Defendant NSR's Motion for Summary Judgment [Doc. # 46] and Defendant Qwest's Motion for Summary Judgment [Doc. # 48]. For the reasons set forth below, the Defendants' Motions for Summary Judgment will be GRANTED.

I.

Mr. Kirkman is the sole owner of a 107.74 acre tract of land located in Fentress Township, Guilford County, North Carolina (the "Kirkman property"). In the 1880s, the Cape Fear and Yadkin Valley Railway Company ("CFY") built a

railroad line adjacent to the Kirkman property. This line ran from Greensboro to Gulf, North Carolina and was part of a longer railroad line running from Mount Airy to Fayetteville, North Carolina. On June 9, 1887, in connection with the construction of this line, the owners of the Kirkman property, Peter and Mariah Kirkman granted CFY:

> A free and perpetual right of entry, right of way, and easement, at any and all times, for the purpose of surveying, locating, building, operating and repairing the said line of railroad, its depots, stations houses, warehouses, bridges, and all necessary erections, and for all other purposes necessary and convenient for the use, operation and business of the said road, in, through and over a strip of land one hundred and thirty feet wide . . . .

(Aff. of John Rall, Ex. B [Doc. # 25].) In 1899, after construction of the Greensboro to Gulf line was completed, CFY's interest in the property passed to the Atlantic & Yadkin Railway Company. The line was then partitioned and the portion relevant to this case was conveyed to the Southern Railway Company. In 1990, the Southern Railway Company changed its name to Norfolk Southern Railway Company. NSR continues to operate the Greensboro to Gulf line today.

In 1997, Qwest entered into a license agreement with NSR that granted Qwest the right to install fiber optic cable on portions of NSR's right-of-way in North Carolina, including the portion adjoining Mr. Kirkman's property. Pursuant to this agreement, Qwest installed cable on NSR's right-of-way during the period between 1997 and 1999. Installation of fiber optic cable is a fairly labor intensive process as it requires the trenching and burying of a conduit, through which fiber

2

optic cable is later pulled. During the installation process, Qwest maintained "Daily Construction Reports" that documented when and where the NSR right-of-way was plowed for the installation of the conduit and fiber optic cable. According to these records, the installation of fiber optic cable on the portion of the NSR right-of-way adjoining the Kirkman property was completed by May 28, 1998. (Def.'s Jt. Surreply, Ex. 2, Decl. of Jackie L. Shives ¶ 9 [Doc. # 35].) However, Mr. Kirkman did not learn of the fiber optic cable installation until he received an advertisement for legal services from counsel in this case sometime in April of 2000.[1] (Kirkman Dep. 151-54.)

Mr. Kirkman filed a Complaint against the Defendants in state court on August 7, 2001, alleging trespass, continuing trespass, unjust enrichment, slander of title, excessive use of a right of way, civil conspiracy and inverse condemnation, and seeking both declaratory relief and monetary damages, including punitive damages. Factually, Mr. Kirkman's legal claims are based upon his allegation that the Defendants installed fiber optic cable on his land without his consent and without payment of compensation. The case was removed to federal court pursuant to 28 U.S.C. §1441 on September 7, 2001, based on diversity of

---

[1] During his deposition, Mr. Kirkman also testified that his brother-in-law informed him that he had seen workmen installing the cable sometime before Mr. Kirkman received the advertisement from the law firm. (Kirkman Dep. 152.) However, Mr. Kirkman could not remember when this conversation occurred. (Id.)

3

citizenship.[2]  On January 5, 2004, the Court denied Mr. Kirkman's Motion to Certify a Class Action [Doc. # 38].[3]  On January 21, 2005, defendant NSR filed a Motion for Summary Judgment [Doc. # 46].  Defendant Qwest filed its Motion for Summary Judgment on February 10, 2005 [Doc. # 48].  Mr. Kirkman responded on April 11, 2005 [Doc. # 52] and NSR filed its Reply on April 27, 2005 [Doc. # 54].  Defendant Qwest filed its Reply on April 28, 2005 [Doc. # 53].

II.

Summary judgment is appropriate only when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Material facts are those facts identified by the controlling law as essential elements of the claims asserted by the parties.  Thus, the materiality of a fact depends on whether the existence of that fact could cause a jury to reach a different outcome.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001).  A genuine issue of material fact exists if the evidence is sufficient for a reasonable trier of fact to find in favor of the nonmoving party.  Anderson, 477 U.S. at 248.  There is

---

[2] Defendant Qwest is a Delaware corporation and Defendant NSR is a Virginia Corporation.  Mr. Kirkman is a resident of North Carolina.

[3] In the Memorandum Opinion denying Plaintiff's Motion to Certify Class Action, the Court noted that "any class member who alleges the installation of cable prior to August of 2001 would be subject to a statute of limitations defense." Kirkman v. Norfolk Southern Railway Co., No. 1:01CV00850, at *7 (M.D.N.C. Jan. 5, 2004).

no genuine issue of material fact if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

III.

The Defendants contend that Mr. Kirkman's claims are barred by the statute of limitations provided for in N.C. Gen. Stat. § 1-52(17). Under this section, a three year statute of limitations applies in all actions:

> against a public utility, electric or telephone membership corporation, or a municipality for damages or for compensation for right-of-way or use of any lands for a utility service lines or lines to serve one or more customers or members unless an inverse condemnation proceeding is commenced within three years after the utility service line has been constructed.

N.C. Gen. Stat. § 1-52(17).

The Western District of North Carolina applied § 1-52(17) to a suit virtually identical to this one. Gasperson v. Sprint Commc'ns Co., No. 1:95CV208, Memorandum and Order (W.D.N.C. June 17, 1996).[4] In Gasperson, Sprint Communications entered into a license agreement with Norfolk Southern Railway that allowed the company to install fiber optic cable along an easement that NSR had obtained from the Gaspersons' predecessor. The Gaspersons filed suit against

---

[4] Gasperson v. Sprint Commc'ns Co., No. 1:95CV208, Memorandum and Order (W.D.N.C. June 17, 1996) was provided to the Court as Exhibit 3 of Defendant NSR's Memorandum in Support of Motion for Summary Judgment [Doc. # 47].

5

the two companies alleging, among other things, trespass and conspiracy to trespass. The court dismissed the Gaspersons' trespass and derivative claims because they had not filed suit within the statutory period provided for in N.C. Gen. Stat. § 1-52(17). In doing so, the court noted that even if a landowner is entitled to compensation for the installation of fiber optic cables on his or her land,

> [b]ecause Defendant Sprint installed its fiber optic cable across the Plaintiff's property more than three years prior to the filing of the Plaintiff's initial complaint, and because no inverse condemnation proceeding was ever commenced, the Court concludes that § 1-52(17) bars any resulting trespass action, as well as any resulting conspiracy to trespass action, against the Defendants both for damages incident to the original trespass and for permanent damages.

Id. at *4. The Fourth Circuit affirmed the district court's holding in Gasperson. Gasperson v. Sprint Communications Co., 1997 WL 770931, at *1 (4th Cir. 1997) ("We also agree with the district court that the three year statute of limitations contained in § 1-52(17) of the North Carolina General Statutes bars the Gaspersons' trespass claims.").

Similarly, in Curtis v. Norfolk Southern Railway Co., the district court adopted the Magistrate Judge's recommendation that a plaintiff's claims for trespass, continuing trespass, unjust enrichment, slander of title, excessive use of right-of-way, civil conspiracy, declaratory relief, and inverse condemnation against the defendant railroad company be dismissed because they were barred by N.C. Gen. Stat. § 1-52(17). Curtis v. Norfolk Southern Railway Co., No.

1:01CV00869, Recommendation of United States Magistrate Judge (M.D.N.C. Aug. 27, 2002); Curtis v. Norfolk Southern Railway Co., No. 1:01CV00869, Order (M.D.N.C. April 11, 2003) (adopting recommendation of Magistrate Judge).[5] In the Recommendation, the Magistrate Judge specifically noted that "[f]ollowing the Gasperson court's interpretation of North Carolina law, a plaintiff's claims based on the allegedly unauthorized installation of telecommunications and other utility lines are barred unless the aggrieved landowner brings suit within three years after the line has been constructed." Curtis, No. 1:01CV00869, at *6 (M.D.N.C. Aug. 27, 2002).

In his Response to the Defendants' motions for summary judgment, Mr. Kirkman does not contest that N.C. Gen. Stat. § 1-52(17) applies to the claims he has brought against the Defendants in this case. Instead, he contends that the application of N.C. Gen. Stat. § 1-52(17) to his claims would "deprive him of his property without due process of law." (Pl.'s Mem. Opp. 4.) He argues that because Qwest has the power of eminent domain in North Carolina, it is also subject to the notice requirements of North Carolina's Eminent Domain Statute. (Id. at 5.) Therefore, the application of N.C. Gen. Stat. § 1-52(17) to this case would allow Qwest to take Mr. Kirkman's property without providing notice to him

---

[5] Curtis v. Norfolk Southern Railway Co., No. 1:01CV00869, Recommendation of United States Magistrate Judge (M.D.N.C. Aug. 27, 2002) and Curtis v. Norfolk Southern Railway Co., No. 1:01CV00869, Order (M.D.N.C. April 11, 2003) were provided to the Court as Exhibit 5 of Defendant NSR's Memorandum in Support of Motion for Summary Judgment [Doc. # 47].

7

of the taking and thus violates his rights under the due process clause.  (Id. at 7.)

However, although Qwest, as a telecommunications company, has the power of eminent domain under North Carolina law,[6] it does not appear that Qwest exercised this power in this case.  Rather, the company entered into a license agreement with NSR to install fiber optic cable on the railroad's right-of-way.  North Carolina law specifically authorizes telecommunications companies to enter into these agreements.  See N.C. Gen. Stat. § 62-180; N.C. Gen. Stat. § 62-182.[7]  Thus, Qwest was under no obligation to comply with the notice provisions of North Carolina's Eminent Domain Statute.

In this case, it is undisputed that Qwest installed the fiber optic cable on Mr. Kirkman's property in May of 1998.  Mr. Kirkman then had three years to bring the present cause of action.[8]  He failed to do so until August of 2001.  Therefore, Mr. Kirkman's claims are barred by the three year statute of limitations provided for in N.C. Gen. Stat. § 1-52(17).

---

[6] See N.C. Gen. Stat. § 62-183.

[7] N.C. Gen. Stat. § 62-180 provides that "[a]ny person operating electric power, telegraph or telephone lines or authorized by law to establish such lines, has the right to construct, maintain and operate such lines along any railroad . . . ." And, under N.C. Gen. Stat. § 62-182, "[s]uch telegraph, telephone, or electric power or lighting company has power to contract with any person or corporation, the owner of any lands, or of any franchise or easement therein, over which its lines are proposed to be erected, for the right-of-way for planting, repairing and preservation of its poles or other property . . . ."

[8] Indeed, Mr. Kirkman admits that he was aware of the installation of the fiber optic cable prior to the tolling of the statute of limitations.

8

IV.

For the foregoing reasons, Defendant Norfolk Southern's Motion for Summary Judgment [Doc. # 46] and Defendant Qwest's Motion for Summary Judgment [Doc. # 48] will be GRANTED.

This the day of March 6, 2006

          /s/ N. Carlton Tilley, Jr.
United States District Judge